IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WALSH CHIROPRACTIC, LTD., Individually and on Behalf of Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>STRATACARE, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>) Case No. 09-cv-1061-MJR<br>)<br>)<br>)<br>)<br>)<br>) |

## **MEMORANDUM AND ORDER**

**Reagan, District Judge:**

   This action pertains to an alleged scheme known as a "silent PPO," a term of art for a specific kind of Preferred Provider Organization ("PPO") abuse. A PPO is a managed care technique encompassing numerous contracts between health care providers (such as Plaintiff Walsh Chiropractic, Ltd. ("Walsh")), payors (such as insurance carriers and employers), various third parties, and the PPO network administrator. The PPO at issue here is administered by First Health Group Corporation ("First Health"), which is not a party to this action. Defendant StrataCare, LLC ("StrataCare"), is a software company; its software and personnel are used to facilitate the electronic processing of transactions between the provider, the payor and the PPO administrator, First Health.

   Plaintiff Walsh has filed a motion for class certification and memorandum in support (Docs. 41 and 42). Defendant StrataCare has filed a memorandum in opposition to class certification (Doc. 44), to which Walsh has filed a reply (Doc. 46). An evidentiary hearing was held on January 6, 2011 (Doc. 50 Transcript), and the Court accepted proposed findings of fact and conclusions of law from each party (Docs. 51-1 and 52). The Court now rules as follows.

A. **Procedural History and Background**

On November 6, 2009, Plaintiff Walsh Chiropractic filed this putative class action in the Third Judicial Circuit Court in Madison County, Illinois, alleging various breach of contract theories and a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 501/1 et seq., (Doc. 9-1). On December 17, 2009, Walsh filed its First Amended Class Action Complaint (Doc. 9-2), adding two additional counts: one for unjust enrichment and the other alleging violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(c), 1964(c). Defendant StrataCare removed this action to federal court on December 28, 2009, pursuant to 28 U.S.C. § 1441, alleging this Court has federal question, supplemental and diversity jurisdiction under 28 U.S.C. §§ 1331, 1367(a) and 1332(a)(1), respectively (Doc. 9). On motion by StrataCare (Doc. 20), all of Walsh's contract claims (Counts I-IV) were dismissed, but the action proceeds on the ICFA, RICO and unjust enrichment claims (Counts V-VII) (Doc. 38).

In analyzing the motion for class certification, the Court keeps in mind that it has been found that the relationship between Walsh and StrataCare stems from two separate, though related, contracts (*see* Doc. 38).[1] The first specific contract at issue is the Provider Agreement that Walsh entered into with First Health on March 13, 2002 (Doc. 32-1, pp. 1-10 (Ex. A)). Under this contract, Walsh, as a provider, agrees to participate in the First Health PPO, and provide services to "participating patients"—as defined by the contract—at discounted rates. The Provider Agreement further dictates that "First Health will offer to certain Payors the opportunity to contract

---

[1]There are actually three relevant versions of the Provider Agreement, but the Court considers reference to the Provider Group Agreement (Doc. 32-7, pp. 22-35) and the Participating Clinic Group (Doc. 32-7, pp. 36-43) to be duplicative of the basic Provider Agreement. Like the parties, for the sake of clarity, the Court will reference only the basic Provider Agreement (Doc. 32-1, pp. 1-10).

with First Health to utilize the services of the health care providers participating in the Preferred Provider Panel" (Doc. 32-1, p. 1, § 1.5). First Health is required to provide Providers with a list of all Payors, with whom it has entered into such agreements (Doc. 32-1, p. 1, § 1.5). For purposes of the Provider Agreement:

> "Payor" means any employer, trust fund, insurance carrier, health care service plan, trust, nonprofit hospital service plan, a governmental unit, any other entity which has an obligation to provide medical services or benefits for such services to Participating Participants, or any other entity which has contracted with First Health to use First Health's PPO Plan.

Doc. 32-1, p. 1, § 2.7.

The second contract at issue is between StrataCare and First Health, entitled, "Workers' Compensation Managed Care Services Network Agreement" ("Network Access Agreement"), signed on January 1, 2005 (Doc. 34-2). Per the Network Access Agreement, upon execution of a form written agreement, referred to as an "Appendix II Agreement" (Doc. 34-2, pp. 16-19), StrataCare's clients – referred to as "sub-clients"– are entitled to the discounted rates in the Provider Agreements between First Health and Providers, such as Walsh.

In essence, Plaintiff claims that it was fraud for Defendant StrataCare to submit, or cause to be submitted, thousands of misleading Explanations of Review ("EORs") deceptively claiming PPO discounts for medical services pursuant to First Health PPO network discounts when neither StrataCare nor its clients were entitled to those discounts as legitimate First Health Payors. From Walsh's perspective, StrataCare took discounts beyond what was authorized by any contractual authority, "without performing the associated obligation of 'preferring' the preferred providers by channeling or steering patients to [Walsh], and because Defendant and its third-party payor clients were not proper 'Payors' under [Walsh's] and class members' PPO provider

agreements"( Doc. 2-2, pp. 1-2).[2]

The Court ruled that, as pleaded, Walsh's contract claims failed because: (1) the Network Access Agreement did not incorporate, specifically or by reference, the Provider Agreement between Walsh and First Health; (2) Walsh was not an intended third-party beneficiary of the Provider Agreement between Walsh and First Health; (3) there was no implied contract; and (4) there is no joint venture between StrataCare and First Health (*see* Doc. 38). Although all contract claims were dismissed, the Court further ruled that the RICO claim was sufficiently pleaded, based on an "association in fact;" the ICFA claim was plausible because, as pleaded, StrataCare was the proximate cause of Walsh's actual damages (i.e. not receiving full fees), and Walsh's patients may be affected by StrataCare's allegedly fraudulent claims, via fee increases needed to cover Walsh's decreased income; and the unjust enrichment claim(s) could proceed, premised upon the alleged fraud (*see* Doc. 38).

## B. The Proposed Class

Plaintiff Walsh moves for class certification pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), based on the predominance of questions of law and fact common to the class. Without objection from StrataCare, Walsh has slightly narrowed the proposed class than from what was delineated in the First Amended Class Action Complaint (Doc. 2-2). The revised proposed class is:

---

[2]From Walsh's perspective, there was a uniform practice whereby Providers transmitted bills to StrataCare; StrataCare transmitted the bills to First Health for repricing; First Health applied discounts and returned the adjusted bill back to the Provider by way of an EOR transmitted by StrataCare, which uniformly stated that, "PPO REDUCTION: First Health P & T The charges have been priced in accordance with First Health owned network," and that discounts were based on "individual provider's agreement with the preferred provider organization"(*see* Doc. 32-2, p. 5 Sample bill sent to Walsh).

> All Illinois medical providers who:
>
> (a) entered into the First Health Network Participating Provider Agreement, the First Health Network Participating Provider Group Agreement, or the First Health Network Participating Clinic Agreement;
>
> (b) provided medical services to an Illinois workers compensation claimant; and
>
> (c) received partial payment from a StrataCare client based on access to a First Health PPO discount through the Workers Compensation Managed Care Services Agreement dated January 1, 2005, between StrataCare and First Health.

Defendant StrataCare contends that the relevant time period should be limited to between January 1, 2005, and January 1, 2009– the inclusive dates of Walsh's contract with First Health, and after which the Coventry-StrataCare Agreement took effect (*see* Doc. 44-6 at § 8.4).

### C. Legal Standards for Class Certification

Rule 23 of the Federal Rules of Civil Procedure governs class actions. When a plaintiff seeks class certification, the Court should not consider the merits of the case, although the Court may look beyond the pleadings. *Wiesmueller v. Kosobucki,* 513 F.3d 784, 787 (7th Cir. 2008); *Chavez v. Illinois State Police,* 251 F.3d 612, 629-630 (7th Cir. 2001); *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982). The Court may make whatever factual and legal inquiries are necessary for the Rule 23 determination. *See Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675-676 (7th Cir. 2001).

Plaintiffs seeking class certification bear the burden of proving the action satisfies the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *Harper v. Sheriff of Cook County,* 581 F.3d 511, 513 (7th Cir. 2009). Once all of the

requirements of Rule 23(a) are satisfied, plaintiffs' claims must fall within at least one subsection of Rule 23(b). *Arreola v. Godinez,* 546 F.3d 788, 797 (7th Cir. 2008). In this case, Plaintiff Walsh seeks to certify a class under Rule 23(b)(3).

"Certification under Rule 23(b)(3) requires that 'the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.' " *Pella Corp. v. Saltzman,* 606 F.3d 391, 393 (7th Cir. 2010) (quoting Fed.R.Civ.P. 23(b)(3)). Rule 23(b)(3) further provides:

> The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b).

### D. Analysis

StrataCare does not contest that Walsh can satisfy the four prerequisites for class certification prescribed by Rule 23(a). Nevertheless, the Supreme Court and the Court of Appeals for the Seventh Circuit have cautioned against "certification by default."

> The Supreme Court has made clear that a class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied," and "actual, not presumed, conformance with Rule 23(a) remains ... indispensable." [*General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160-161 (1982)]. The requirement that the district court conduct this "rigorous analysis," among other things, serves the important function of protecting absent class members whose rights may be affected by the class certification.

*Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003). Accordingly, the Court will address each of the four Rule 23(a) prerequisites for class certification.

### 1. Rule 23(a)(1)-Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a) (1). Plaintiffs "cannot rely on 'mere speculation' or 'conclusory allegations' as to the size of the putative class to prove that joinder is impractical for numerosity purposes." *Arreola,* 546 F.3d at 797 (citing *Roe v. Town of Highland,* 909 F.2d 1097, 1100 n. 4 (7th Cir. 1990)). However, if plaintiffs are unable to provide exact numbers, "a good faith effort is sufficient to establish the number of class members." *Jenkins v. Mercantile Mortg. Co.,* 231 F.Supp.2d 737, 744 (N.D.Ill. 2002) (citations omitted).

According to the deposition testimony of Doreen Corwin, Director of Network Affairs for StrataCare, in her estimation there are "more than a thousand" First Health preferred providers in Illinois from whom StratCare and/or its clients have taken PPO discounts. Doc. 32-3, p. 17 (Corwin Dep., p, 63). Consequently, the numerosity requirement is satisfied.

### 2. Rule 23(a)(2)-Commonality

Rule 23(a)(2) requires that questions of law or fact common to the class must be

present. Rule 23(a)(2) insists that the class be "reasonably homogeneous." *Culver v. City of Milwaukee,* 277 F.3d 908, 910 (7th Cir. 2002) (citing *Sosna v. Iowa,* 419 U.S. 393, 403 n. 13 (1975)). "The fact that there is some factual variation among the class grievances will not defeat a class action." *Rosario v. Livaditis,* 963 F.2d 1013, 1017-1018 (7th Cir. 1992) (citing *Patterson v. General Motors Corp.,* 631 F.2d 476, 481 (7th Cir. 1980)). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Id.* (citing *Franklin v. City of Chicago,* 102 F.R.D. 944, 949-50 (N.D.Ill.1984)); *see also Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998) (There need only be at least one question of law or fact common to the class).

At this juncture there is sufficient evidence that StrataCare employed a uniform scheme to all potential class members, a scheme based on: (1) form provider agreements sufficiently similar for purposes of 50 ILL.Admin. Code § 2051.55(c), that StrataCare did not file any "substantial or material" variations with the Illinois Department of Insurance (*see* Docs. 32-7 - 32-8); and (2) common, standardized practices built into the StrataCare software, which generated the EORs, each of which contained allegedly misleading language (*see* Doc. 32-6, pp. 3-5 (Sheila Garcia Deposition, pp. 6-17)). The common use of the StrataCare software to create and transmit EORs as described provides the common nucleus of fact necessary to satisfy Rule 23(a)(2). However, it remains to be seen whether this common EOR process is sufficient for liability to attach vis-a-vis the fraud claims– which highlights the common questions of law that will likely have to be addressed. Whether these common issues predominate will be addressed below, relative to Rule 23(b)(3).

### 3. Rule 23(a)(3)- Typicality

Rule 23(a)(3) requires that" the claims *or* defenses of the of the representative parties

are typical of the claims *or* defenses of the class." Fed.R.Civ.P. 23(a)(3) (emphasis added).[3] A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983) (citations omitted). The purpose of the typicality requirement is to ensure that the interests of the class representatives are aligned with those of the class as a whole. *See Insolia v. Philip Morris Inc.,* 186 F.R.D. 535, 544 (W.D.Wis.1998). As a result, a proposed class member's claim is not typical if proof "would not necessarily prove all the proposed class members' claims." *Ruiz v. Stewart Assocs.,* 167 F.R.D. 402, 405 (N.D.Ill.1996). However, not every class member need suffer the same injury as the class representatives, for typicality may be found even where "there are factual distinctions between the claims of the named plaintiffs and those of the other class members." *Rosario v.* Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992); *De La Fuente,* 713 F.2d at 232. As summarized by the Seventh Circuit in *Oshana v. Coca-Cola Co.,* 472 F.3d 506 (7th Cir. 2006):

> A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and her claims are based on the same legal theory. Even though some factual variations may not defeat typicality, the requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large.

472 F.3d at 514 (quotation marks and citations omitted).

Again, the StrataCare software and common method of processing the EORs provide a common and typical practice, upon which all claims are based. Similarly, the Provider Agreement

---

[3] Typicality is supposed to be determined with reference to the defendant's actions, not the defenses it may have against particular plaintiffs. *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721 724-725 (7th Cir. 2011) (citing *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)).

"template" (as StrataCare describes it) that is the linchpin of StrataCare's relationship with Walsh is typical of the core agreement for the class of providers at large, even though providers often negotiated contract terms, and agreements included individualized attachments or addendums (*see* Doc. 34-8 (Affidavit of Brian Jans, ¶¶ 4- 9)). Therefore, in terms of the Provider Agreement, the EOR process, and the common EOR language about the First Health discount having been taken, Walsh's evidence can prove the claims of the class, even though contract variations may affect the calculation of damages. Therefore, for purposes of Rule 23(a)(3), typicality exists.

### 4. Rule 23(a)(4)- Adequacy of Representation

The final prerequisite of Rule 23(a) is that the named plaintiffs be adequate representatives of the class. For example, if the named plaintiffs' claims are not as strong, or if the named plaintiffs are subject to a particular defense that would not defeat un-named class members' claim, the named plaintiffs do not adequately represent the class. *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011).

StrataCare did not address any of the Rule 23(a) criteria; rather, StrataCare elected to focus on the Rule 23(b)(3) predominance issue. StrataCare analyzed the predominance issue by examining the elements of proof required for each fraud claim, such as causation and deception, which StrataCare contends are individualized inquiries. If StrataCare is correct, then Walsh would not be an adequate representative for purposes of Rule 23(a)(4). Therefore, the Court will move on to analyze whether individual or class issues predominate, as required by Rule 23(b)(3).

### 5. Rule 23(b)(3)

Plaintiff Walsh Chiropractic seeks to certify a single-state (Illinois) class under Rule 23(b)(3). "Certification under Rule 23(b)(3) requires that 'the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.' " *Pella Corp. v. Saltzman,* 606 F.3d 391, 393 (7th Cir. 2010) (quoting Fed.R.Civ.P. 23(b)(3)). Rule 23(b)(3) further provides:

> The matters pertinent to these findings include:
>
> **(A)** the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> **(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> **(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> **(D)** the likely difficulties in managing a class action.

Defendant StrataCare counters that material differences regarding the elements of liability and damages for each of the three fraud-based causes of action will require individualized inquiries unsuitable for a class action. StrataCare asserts that individual inquiries will have to be made regarding <u>each</u> provider, claimant, referral by a StrataCare client, medical treatment, bill, EOR and payment.

### a. Predominance

No class action is proper unless all litigants are governed by the same legal rules. Otherwise the class cannot satisfy the commonality and superiority requirements of Fed.R.Civ.P. 23(a), (b) (3). State laws about fraud differ, therefore, the Court of Appeals for the Seventh Circuit has held that suits alleging fraud– such as this action– may not proceed as nationwide classes. *In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1015 (7th Cir. 2002) (citing *Isaacs v. Sprint Corp.,* 261 F.3d 679 (7th Cir. 2001); *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672 (7th Cir. 2001); *In re Rhone-Poulenc Rorer Inc.,* 51 F.3d 1293 (7th Cir. 1995)); *see also Thorogood v. Sears, Roebuck and Co.* 547 F.3d 742 (7th Cir. 2008) (reversing certification of multi-state consumer class because variances in state consumer fraud laws rendered the class unmanageable). Accordingly, Walsh has proposed a class limited to providers in Illinois. Therefore, each claim–RICO, ICFA and unjust enrichment– will be controlled by a single body of law. However, the elements of each claim frame the inquiry regarding whether questions of law or fact common to the class predominate. *Erica P. John Fund, Inc., v. Halliburton Co.*, __U.S.__, 131 S.Ct. 2179, 2184 (2011). Therefore, each claim will be analyzed in turn.

### 1. RICO

To establish a violation of RICO, Walsh must prove: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006); *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992). "Racketeering activity" is defined to include any act which is indictable under 18 U.S.C. §§ 1341 (mail fraud) or 1343 (wire fraud), the two predicate offenses alleged by Walsh. 18 U.S.C. § 1961(1)(B). A "pattern of racketeering activity" requires at least two predicate acts within a ten-year period. 18 U.S.C. §

1961(5). Establishing a pattern also requires a showing that "the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239 (1989); *Midwest Grinding*, 976 F.2d at 1022. Furthermore, a plaintiff must establish that the RICO violation was both the "but for" causation of injury, and the proximate cause of injury. *Holmes v. Securities Investor Protection Corp*., 503 U.S. 258, 265-268 (2006).

With respect to the "pattern of activity" element, the evidence produced allows the RICO claim to now be clarified and the time frame of the proposed class narrowed. To show a "pattern of racketeering activity" a civil RICO plaintiff no longer may merely allege two predicate acts, "but must also satisfy the so-called 'continuity plus relationship' test." *Midwest Grinding*, 976 F.2d at 1022. That is, "the predicate acts must be related to one another (the relationship prong) *and* pose a threat of continued criminal activity (the continuity prong)." *Id.* "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241 (1989). When deciding StrataCare's motion to dismiss, the Court noted that it was unclear whether Walsh pleaded an open-ended or closed-ended pattern of activity (Doc. 38, p. 25). Now, the Court finds that Walsh's RICO claim must be analyzed as a closed-ended pattern of activity. As pleaded, the proposed class is limited to the First Health PPO, and evidence has been produced establishing that Coventry Health Care, Inc., purchased First Health and superseded and terminated the First Health PPO network agreements as of January 1, 2009 (*see* Doc. 44-6, p. 12, ¶ 8.4 (amendment only by written agreement)). Therefore, the relevant

period is between January 1, 2005, and January 1, 2009.[4]

Arguing that the RICO claim is appropriate for class action, Plaintiff Walsh relies principally on *Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004), which involved HMO providers who claimed they were underpaid by the HMO's computer system. A RICO class action claim based on mail and wire fraud was permitted to proceed without proof of individual reliance, based on legitimate inferences drawn from common evidence (standardized misrepresentations), and despite the need for individualized evidence of damages. *Id.* at 1259. Relative to EOB forms claiming providers had been paid the proper amounts, the Court of Appeals for the Eleventh Circuit stated:

> The alleged misrepresentations in the instant case are simply that the defendants repeatedly claimed they would reimburse the plaintiffs for medically necessary services they provide to the defendants' insureds, and sent the plaintiffs various EOB forms claiming that they had actually paid the

---

[4] Some panels of the Seventh Circuit Court of Appeals have not distinguished between closed and open-ended periods of racketeering, and focus on the same factors in either case, including: "(1) the number and variety of the predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries." *Gagan v. American Cablevision, Inc.*, 77 F.3d 951, 962-963 (7th Cir.1996)(citation omitted). However, these factors are most commonly associated with a so-called "closed scheme." *See Midwest Grinding*, 976 F.2d at 1023-1024. Either way, most panels appear to agree that "[t]he most relevant and dispositive factor is the number and variety of predicate acts and the length of time over which they were committed." *Gagan*, 77 F.3d at 963. In other words, in a closed-ended pattern, "the predicate acts must extend over a substantial period of time." *Midwest Grinding*, 976 F.2d at 1024 (quotations omitted). "[E]ach instance of false billing inflicted an injury separate and independent of the previous and succeeding instances of false billing." *Gagan*, 77 F.3d at 963, quoting *Liquid Air Corp. v. Rogers*, 834 F.2d 1297 (7th Cir.1987) (where a single scheme of fraudulent medical billing which lasted seven months and defrauded one victim established a pattern of racketeering activity). Before the Court are two of Walsh's EORs, received approximately six months apart, allegedly evincing a misleading or deceptive claim to the First Health PPO discount when none was warranted (Doc. 32-2). Unlike StrataCare, the Court does not perceive that determining the viability of the closed-ended scheme is dispositive of the Rule 23(b)(3) predominance question.

14

> plaintiffs the proper amounts. While the EOB forms may raise substantial individualized issues of reliance, the antecedent representations about the defendants' reimbursement practices do not. It does not strain credulity to conclude that each plaintiff, in entering into contracts with the defendants, relied upon the defendants' representations and assumed they would be paid the amounts they were due. A jury could quite reasonably infer that guarantees concerning physician pay-the very consideration upon which those agreements are based-go to the heart of these agreements, and that doctors based their assent upon them.

*Id*. at 1259.

In 2006, two years after *Klay*, the United States Supreme Court decided *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008), pertaining to a RICO class action claim based on mail fraud. The Supreme Court ruled that individual reliance is neither an element of a RICO mail or wire claim, nor a *requirement* for establishing proximate cause. *Id*. at 649-650, 659. *Bridge* would seem to support Walsh's position, but, as StrataCare notes, the Supreme Court also stated: "Of course, none of this is to say that a RICO plaintiff who alleges injury 'by reason of' a pattern of mail fraud can prevail without showing that *someone* relied on the defendant's misrepresentations. In most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation." *Id.* at 658 (emphasis in the original; internal citation and quotation from *Field v. Mans*, 516 U.S. 59 (1995) omitted).

Walsh argues that causation is established because the discounts were taken simultaneously with the transmittal of misleading EORs– making the fraud a *fait accompli.* This gloss ignores that the standard EOR directed providers to call First Health with questions about the EORs (Doc. 32-2, p. 5)– which Walsh did, although he did not follow through with a formal appeal (Doc. 44-7, p. 6 (Walsh Deposition, p. 103))– and that the Provider Agreement contains an appeals mechanism (Doc. 44-8, p. 27; Doc. 44-10, p. 8-9). Walsh, himself, did not find the EORs misleading, he merely objected to the discount being taken (Doc. 44-7, pp. 29, 30 (Walsh

Deposition, pp. 260, 265)). Moreover, any inference of causation stemming from the common evidence is undercut by Walsh's acknowledgment that the causal chain was and could be broken by a variety of factors, illustrating why the causation requirement renders the RICO claim unsuited for class treatment due to the need for individualized inquiry.

Walsh has acknowledged that discounts were accepted for a variety of reasons unrelated to the EOR. For example, Walsh could not say that he had never "balance billed" patients to recoup the discount (Doc. 44-7, p. 3 (Walsh Deposition, p. 79)), thereby reducing any loss; he would accept a discount if a network patient had been referred by an employer, even if financial incentives were not used in the referral (Doc. 44-7, pp. 24-26 (Walsh Deposition, pp. 205-207)); and other benefits of the First Health Network included guaranteed payment of bills within 60 days, and retention of patients (Doc. 44-7, pp. 20, 23(Walsh Deposition, pp. 174, 179)). Also, some providers may have appreciated that StrataCare could fit within the definition of a "provider" under the definition in the Provider Agreements (Doc. 32-1, p. 1, § 2.7). These issues will clearly predominate, despite the relatively straightforward scheme based on the StrataCare software and EOR transmittal. For these same reasons, Walsh is not an adequate representative for purposes of Rule 23(a)(4).

### 2. ICFA

The elements of a successful claim under ICFA are: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010). Walsh also must show that it suffered actual damages from StrataCare's conduct. *See Sound of Music Co. v. Minn. Mining &*

*Mfg. Co.*, 477 F.3d 910, 923 (7th Cir. 2007). In terms of causation, the plaintiff must actually be deceived by the defendant's misrepresentation– proximate causation. *De Bouse v. Bayer, AG*, 922 N.E.2d 309, 316 (2009); *Avery v. State Farm Mutual Automobile Insurance Co.*, 835 N.E.2d 801, 856 (2005). More important to the case at bar, causation cannot be inferred; *each* member of the class must prove that the misrepresentation deceived them. *De Bouse*, 922 N.E.2d at 315; *Barabara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 927 (2007); *Oliviera v. Amoco oil Co.*, 776 N.E.2d 151, 154-155 (2001); *see also Nagel v. ADM Investor Services, Inc*., 217 F.3d 436, 443 (7th Cir. 2000) (recognizing that predominance is a high hurdle in a fraud claim).

In *Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006), a putative ICFA class action alleging that it was deceptive of Coca-Cola not to disclose that fountain Coke and bottled Coke do not contain the same sweeteners, the Court of Appeals for the Seventh Circuit rejected the plaintiffs' argument that the failure to disclose was "per se deceptiveness" absolving the plaintiffs from making individual proof of proximate causation. Similarly, because causation cannot be inferred, Walsh is not saved by the theory that fraudulent discounts were taken simultaneously with the transmittal of misleading EORs.

In *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514-515 (7th Cir. 2006)*, Siegel v. Shell Oil Co.*, 656F.Supp.2d 825, 832-833 (N.D.Ill. 2009), and more recently in *Kremers v. Coca-Cola Co.*, 712 F.Supp.2d 759, 768-771 (S.D.Ill. 2010), putative class actions foundered on the individualized causation requirement because representative plaintiffs admitted that they were not actually deceived by the alleged misrepresentations. The fact that Dr. Walsh has acknowledged that he was not deceived by the EORs (Doc. 44-7, pp. 29, 30 (Walsh Deposition, pp. 260, 265)) highlights that individualized inquiries will be required.

The ICFA claim cannot be certified for class action because the need for individualized proof of causation predominates– overwhelms– the otherwise straight forward EOR scheme alleged by Walsh. Accordingly, Walsh is not an adequate representative for purposes of Rule 23(a)(4), either.

### 3. Unjust Enrichment

The unjust enrichment claim is derrivative of the RICO and ICFA claims. *See Clay v. American Tobacco Co.*, 188 F.R.D. 483, 500 (S.D.Ill. 1999). However, given StrataCare's role as a conduit within the First Health PPO Network, Walsh's unjust enrichment claim seemingly presents the most appropriate cause of action.

> Under Illinois law, to prevail on a claim of unjust enrichment "a plaintiff must present evidence that the defendant unjustly retained a benefit to the plaintiff's detriment and that the defendant's retention of that benefit violated fundamental principles of justice, equity, and good conscience." *M & O Insulation Co. v. Harris Bank Naperville,* 335 Ill.App.3d 958, 270 Ill.Dec. 673, 783 N.E.2d 635, 639 (2002) (citing *B & B Land Acquisition, Inc. v. Mandell,* 305 Ill.App.3d 1068, 239 Ill.Dec. 500, 714 N.E.2d 58, 63 (1999)). Illinois law does not require wrongful conduct as a necessary element of a claim for unjust enrichment. *See Midcoast Aviation, Inc. v. General Elec. Credit Corp.,* 907 F.2d 732, 738 n. 3 (7th Cir.1990) (quoting *Partipilo v. Hallman,* 156 Ill.App.3d 806, 109 Ill.Dec. 387, 510 N.E.2d 8, 11 (1987)).

*Kremers v. Coca-Cola Co.*, 712 F.Supp.2d 759, 774 -776 (S.D.Ill. 2010) (internal citations collecting cases omitted). Nevertheless,"'[u]njust enrichment is an equitable doctrine that ... depends upon the analysis of each individual situation.'" *Clay*, 188 F.R.D. at 500 (quoting *Hershey Foods Corp. v. Ralph Chapek, Inc.,* 828 F.2d 989, 999 (3d Cir.1987).

Again, the evidence before the Court only serves to highlight the individualized inquiries that will be necessary relative to causation and whether there was unjust enrichment. The EOR directed providers to call First Health with questions about the EORs (Doc. 32-2, p. 5)– which

Walsh did– and the Provider Agreement contains an appeals mechanism (Doc. 44-8, p. 27; Doc. 44-10, p. 8-9); therefore, StrataCare may not have always retained a benefit to each Plaintiff's detriment. Also, as discussed above relative to the RIOCO claim, Walsh has acknowledged that the causal chain was and could be broken by a variety of factors. Even in *Klay v. Humana*, 382 F.3d 1241, 1267 (11th Cir. 2004), where a RICO claim was certified, the unjust enrichment claim failed to satisfy the Rule 23(b)(3) predominance requirement.

Therefore, the Court concludes that the unjust enrichment claim is unsuited for class treatment due to the need for individualized inquiry. For the same reasons, Walsh cannot be said to be an adequate representative for purposes of Rule 23(a)(4).

### b. Superiority

Having concluded that none of the three fraud-based claims fully satisfy Rule 23(a), and that individualized questions of law and fact predominate over those questions common to the class, it is axiomatic that a class action is not superior to other available methods of fairly and efficiently adjudicating the controversy relative to providers other than Walsh. Therefore, no additional analysis of the relative superiority (or inferiority) of a class action is warranted.

### E. Conclusion

For the reasons stated, Plaintiff Walsh's motion for class certification (Doc. 41) is **DENIED**.

**IT IS SO ORDERED.**

**DATED: September 14, 2011**

s/ *Michael J. Reagan*
**MICHAEL J. REAGAN**
**UNITED STATES DISTRICT JUDGE**